**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | |
|---|---|
| **ARLENA TIPPIE** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 10-2702-STA-dkv** |
| ) | |
| **TENNESSEE DEPARTMENT OF** ) | |
| **REVENUE,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant's Motion for Summary Judgment (D.E. # 16), filed on February 24, 2012. Plaintiff filed a Response (D.E. # 25) on April 19, 2012. For the following reasons, Defendant's Motion is **GRANTED**.

## BACKGROUND

Defendant employed Plaintiff, an African-American female, at its Shelby County, Tennessee office as a revenue enforcement officer. (Intake Questionnaire, D.E. # 16-8, at 11.) On September 11, 2009, Plaintiff went to the EEOC's Memphis office and filled out an intake questionnaire. (*Id.* at 10.) Plaintiff listed two immediate supervisors, Gale Jones ("Jones") and Larry Berry ("Berry"), and David Scates ("Scates") was their supervisor. (*Id.* at 11.) Plaintiff identified Joe Cobb ("Cobb") as an individual who was in the same situation as her, and he was treated more favorably because his case load was reduced and subsequently added to Plaintiff's case load. (*Id.* at 12.) Plaintiff's EEOC charge was issued on November 2, 2009, and Plaintiff

1

checked the boxes for discrimination based on race, sex, and disability.  (*Id.* at 20.)  Although

Plaintiff had earlier stated that she was terminated on January 30, 2009, and had been replaced

by a younger worker (*id.* at 15), the EEOC charge states that she was discharged on February 9,

2009.  (*Id.* at 20.)  The EEOC issued its Notice of Right to Sue on June 29, 2010.  (D.E. # 1-1, at

1.)  Plaintiff filed her Complaint for Discrimination in Employment ("the Complaint") on

September 27, 2010.  (D.E. # 1.)

Plaintiff initially pled claims of harassment under state law, retaliation under state law,

race and gender discrimination under federal law, negligent infliction of emotional distress

("NIED"), intentional infliction of emotional distress ("IIED"), and hostile work environment.

(Compl. at 4-7.)  Defendant filed a Motion to Dismiss Plaintiff's state law claims (D.E. # 5) on

January 12, 2011, which the Plaintiff failed to oppose and the Court granted (D.E. # 8) on March

31, 2011.  Therefore, the only claims remaining before the Court are Plaintiff's race and gender

discrimination claims under Title VII of the Civil Rights Act ("Title VII") and her hostile work

environment claim.[1]  The docket reflects little additional activity, other than continuing the trial

setting, prior to the filing of the Motion now before the Court.[2]

---

[1]     Although Plaintiff's Complaint does not specify whether Plaintiff brought her hostile work environment claim under Title VII or its state law equivalent, Defendant interpreted it as being a Title VII claim in its Motion for Summary Judgment.  Accordingly, the Court's interpretation will follow that of Defendant, and the Court finds that Plaintiff did not state a state law hostile work environment claim in her Complaint.  If she did, it was dismissed pursuant to the Court's March 31, 2011 order.

[2]     The Court notes that Defendant never filed an Answer. Filing a Motion to Dismiss which results in dismissal of only some of the plaintiff's claims certainly does not absolve a defendant from the requirement of filing an answer to the remaining claims.  However, the cases the Court researched either involved a plaintiff filing for default judgment or summary judgment in the face of a defendant's failure to answer.  As Plaintiff has not filed either of these motions in this case despite having ample opportunity to do so, the Court will address the merits

The following facts are taken as undisputed for purposes of this Motion unless otherwise noted.  Plaintiff was assaulted at work in 2006.  (Def.'s Statement of Facts, D.E. # 16-2, at 1.)  Her supervisors were disciplined for their failure to report the assault.  (*Id.*)  Defendant asserts that Plaintiff believed the harassment consisted of being disciplined constantly and not being given support after she was assaulted at work.  (*Id.*)  Plaintiff attempts to dispute this fact by more specifically identifying examples of harassment, but she cites to portions of the record which are not before the Court.[3]  The harassment arose because Plaintiff's supervisors were reprimanded for failing to report the assault on Plaintiff.  (*Id.*)  Plaintiff believes that she was harassed because of this discipline, and the harassment and hostile work environment continued

of Defendant's Motion.

[3]       At summary judgment, "[a] district court is not required to speculate on which portion of the record [a] party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support [a] party's claim."  *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Thus, a court is not required to pour through documents when a party does not direct the court's attention to any specific statements or passages in support of its motion.  While the Sixth Circuit does not require the designation of specific page numbers, parties are required to "point out the location" of the statements "with enough specificity that the district court can readily identify the facts upon which the . . .party relies."  *Anderson v. Vanderbilt Univ.*, No. 09-0095, 2010 WL 2196599 (M.D. Tenn. May 27, 2010).

In this case, Plaintiff has failed to "readily identify" the facts supporting her dispute to these and other of Defendant's presented facts.  Here, Plaintiff cites to a series of exhibits to her deposition, only some of which were filed by Defendant in its Motion.  She also cites to her own Affidavit, which is notably absent from the record, as well as pages of her deposition which were not filed by Defendant.  These citations are insufficient to properly dispute a fact presented as undisputed by Defendant.

Additionally, Plaintiff's exhibit # 6, entitled "Evidence of Being Denied Assistance," is merely a blank page of computer paper with several lines of text in Arial font accompanied by handwriting explaining the text.  Although Defendant did not object to the submission of this evidence, the Court finds that without some sort of affidavit or declaration identifying what it purports to be, it would not be admissible into evidence.  Accordingly, the Court will disregard Plaintiff's exhibit # 6.

because of this discipline.  (*Id.*)  Plaintiff attempts to dispute these and other facts submitted by Defendant by citing to her Affidavit, which is not attached to her Response and is nowhere to be found on the record, and pages 106 and 135 of her deposition for the proposition that she "would like to extend this admission to state that she also believes that the harassment was also based upon her race and gender."  (Pl.'s Resp., D.E. # 25-2, at 2.)[4]  However, page 135 of her deposition is not part of the deposition excerpts submitted by Defendant, and Plaintiff did not submit a copy of her deposition.  And page 106 of her deposition does not state that she believes that the harassment was based upon her race and gender.  Instead, page 105 mentions that she "started to believe that [the harassment and discipline] were happening to [her] because of [her] race and [her] gender."  (Dep. of Pl., D.E. # 16-4, at 28.)  Therefore, Plaintiff has put forth evidence sufficient to dispute this fact.  It is undisputed that Plaintiff was not discriminated against in any way before her supervisors were disciplined.  (Def.'s Statement of Facts, D.E. # 16-2, at 2.)

Jones, an Africa-American female, became Plaintiff's supervisor sometime during 2007 or 2008.  (*Id.*)  Plaintiff began reporting harassment in 2007 or 2008.  (*Id.*)  Plaintiff stated that if she had believed the harassment was because of her race or gender at the time, she would probably have stated as such in her complaints.  (*Id.*)  She also acknowledged that it would have been important to state that the basis of the harassment was her race or gender.  (*Id.*)  Plaintiff does not dispute this fact, but she adds that she did not state that the harassment was because of her race or gender due to fear of "further harassment, intimidation, and retaliation."  (Pl.'s Resp.,

---

[4]       Rather than citing to the pages of Plaintiff's deposition, the Court will cite to the documents' ECF page numbers.

D.E. # 25-2, at 2.)  In support of this statement, Plaintiff again cites to her Affidavit, which is not before the Court, and pages 106 and 144 of her deposition.  However, page 144 of her deposition is not part of the deposition excerpts submitted by Defendant, and Plaintiff did not submit a copy of her deposition.  On page 107, rather than page 106, of her deposition, Plaintiff states that she did not include the allegation that the harassment was race- or gender-based because of the volatile atmosphere in the workplace; she was "trying to get along, trying to keep the peace, trying not to bring up situations that were going on in there, [and] trying to get along in the chaos."  (Dep. of Pl., D.E. # 16-4, at 30.)  Accordingly, Plaintiff disputes this and other facts to the extent stated in her deposition testimony rather than as stated in her Response to Defendant's Facts.

Plaintiff met with a counselor, Mary Carpenter ("Carpenter"), due to the harassment she suffered and "probably" spoke with her about why she was being harassed.  (*Id.*)  Carpenter wrote a letter on Plaintiff's behalf discussing Plaintiff's reasons for seeking treatment: the letter does not mention whether Plaintiff said anything about race- or gender-based discrimination.  (*Id.*)  Instead, Plaintiff perceived the motivation behind her harassment as her supervisors' reprimands for improperly reporting her assault.  (*Id.*)  Plaintiff alleges that she did discuss race and gender as factors for the discrimination against her, and she sought treatment from Carpenter due to the "harassment inflicted upon her on the job and the stress related thereto."  (Pl.'s Resp., D.E. # 25-2, at 3.)  However, Plaintiff cites to page 13 of her deposition, which is not part of the record, and she cites to her absent Affidavit.  Consequently, Plaintiff has not presented admissible evidence to dispute this fact.

Plaintiff emailed Commissioner Farr, the commissioner of the Tennessee Department of Revenue, regarding a grievance she filed about a written warning she received in February of 2008. (Def.'s Statement of Facts, D.E. # 16-2, at 2.)  In her deposition, Plaintiff stated that it would have been important to tell Commissioner Farr that she was suffering race and gender discrimination, but the email states that she was harassed due to the events surrounded the assault. (*Id.*)  She "probably" did not mention race or gender being the basis for her harassment at the hearing. (*Id.*)

Plaintiff received a three-day suspension for failing to comply with Defendant's policies, and she filed a grievance. (*Id.* at 3.)  At the hearing on her grievance, Plaintiff did not mention that the harassment about which she filed her grievance was based on her race or gender. (*Id.*) On June 20, 2008, Plaintiff forwarded an email she sent to Jones regarding Plaintiff's belief that Jones was harassing her to Tennessee State Employees Association ("TSEA") representative Joann Davis-Davis ("Davis-Davis") because she wanted "some relief." (*Id.*)  However, Plaintiff did not mention that the harassment was based on her race or gender in either the original email to Jones or the forwarded email to Davis-Davis. (*Id.*)  On Plaintiff's July 31, 2008, employee evaluation, she attached seven pages of comments containing allegations of harassment and hostile work environment, but she did not mention race or gender as a basis for the harassment. (*Id.*)  The TSEA submitted a document on Plaintiff's behalf regarding Plaintiff's three-day suspension she received in August or September of 2008 for violating the tax enforcement divisions's Policy 2.1. (*Id.*)  Plaintiff did not mention race or gender as the basis for her grievance. (*Id.*)

On October 28, 2008, Plaintiff requested legal services from TSEA for the grievance arising from her suspension.  (*Id.*)  In her request, she was required to list the specific events indicating Defendant's illegal motive.  (*Id.*)  Plaintiff's alleged illegal discrimination was that she was suffering retaliation because her supervisors were reprimanded due to their failure to adequately address her assault.  (*Id.*)  Although she also stated that she told her doctor that she was being harassed due to filing a worker's compensation claim, she did not mention that her race or gender were a basis for the illegal discrimination.  (*Id.* at 3-4.)

After Defendant decided to fire Plaintiff, she prepared notes for her due process hearing.  (*Id.* at 4.)  Plaintiff's notes indicate that she was discriminated against due to her supervisors being disciplined after she was assaulted; her notes do not mention discrimination based on her race or gender.  (*Id.* at 4.)  Defendant points out that Plaintiff checked the boxes for race, gender, disability, and retaliation on her EEOC intake form.  (EEOC Form, D.E. # 16-8, at 12.)  However, as the basis for her discrimination, she states that she believes she was discriminated against due to disciplines assigned to Jones, Berry, and Scates for failing to report an incident in which Plaintiff was assaulted by a coworker.  (*Id.* at 11.)  The assault resulted in "blunt force trauma to [the] head and multiple other injures."  (*Id.*)  Plaintiff's supplemental information indicates that white males participated in the decision to terminate her and that they ignored her verbal and written requests for relief; Plaintiff also asserts that she suffered discrimination because she received cases by transfer from Cobb, a white male, which related to properties in an economically deprived work area.  (*Id.* at 14-16.)  Plaintiff also identified Cobb as the only individual with whom she was similarly situated.  (*Id.* at 12.)  In her deposition, Plaintiff stated

that Cobb received assistance with his mailing issues which Plaintiff did not receive. (Dep. of Pl., D.E. # 16-5, at 29-30.)

Plaintiff attached an additional supplement regarding her charges of discrimination two months after she submitted her intake form. (Def.'s Statement of Facts, D.E. # 16-2, at 4.) In this documentation, Plaintiff states that the discrimination she faced arose because of the way her supervisors handled her assault, but she does not mention discrimination based on race or gender. (*Id.*) Plaintiff also filed a charge with the Tennessee Human Rights Commission, which resulted in the issuance of a charge form. (*Id.*) Plaintiff provided the information on the form, which does not indicate that she was discriminated against because of her race or gender. (*Id.*)

Citing Plaintiff's deposition testimony, Defendant submits that "[p]art of Plaintiff's job duties was processing payments she received from taxpayers," and Plaintiff knew that that job duty was important. (*Id.* at 5.) Plaintiff attempts to dispute this fact by adding that she "was held to a different standard than other employees of . . . Defendant who were not the same race or gender as . . . Plaintiff." (Pl.'s Resp. to Def.'s Facts, D.E. # 25-2, at 5.) However, Plaintiff cites to pages 44-46 and 48 of her deposition and her Affidavit. Her Affidavit is not filed on the record, and the only page of her deposition on the record is page 45, which does not indicate that Plaintiff was held to a different standard. Accordingly, Plaintiff has not produced sufficient admissible evidence to dispute this fact.

Plaintiff knew that Defendant holds employees who handle money to higher standards. (Def.'s Statement of Facts, D.E. # 16-2, at 5.) Plaintiff was expected to comply with procedures for processing payments, and she was aware that she could be terminated for failing to follow them. (*Id.* at 6.) Plaintiff signed Policy 2.1 regarding the process of payments near the time she

started working.  (*Id.* at 5.)  It provides that employees are required to remit all payments

received no later than 10 a.m. the day after the funds are received.  (*Id.*)  Sometimes the revenue

officers had to be out in the field; in those instances, a payment was not considered "received"

until the officer came back into the office.  (*Id.*)  As such, if a payment arrived at the office on a

Monday, but the revenue officer was out of the office until Wednesday, the officer "received"

the payment on Wednesday and it was due submitted to Nashville for processing by 10 a.m. the

following date.  (*Id.*)  Plaintiff attempts to assert that "no one employed with Defendant adhered

to such policy," but she cites to pages 44-46 and 48 of her deposition and her Affidavit in

support of this assertion.  (Pl.'s Resp. to Def.'s Facts, D.E. # 25-2, at 6.)  She also cites to pages

70-71 of her deposition, which are not in the record.  As previously discussed, this evidence is

insufficient to support her assertion.[5]

　　　Plaintiff's supervisor discussed Plaintiff's problems with processing payments on

January 18, 2008.  (*Id.*)  Nevertheless, Plaintiff contends that she was unaware of any problems

she had processing payments until she received a written warning on February 8, 2008.  (*Id.*)

Plaintiff cites to her Affidavit and page 94 of her deposition for a variety of assertions, including

that the January 18, 2008 conversation contained several different topics of conversation, but the

evidentiary support for her statements is absent from the record.  (Pl.'s Resp. to Def.'s Facts,

D.E. # 25-2, at 7.)  Thus, Plaintiff has not disputed the facts asserted by Defendant.

---

[5]　　　Plaintiff is not alone in her failure to present evidence which the Court can
consider.  Defendant points out that Plaintiff's testimony differed at her civil service due process
hearing and her deposition.  It also points out that Plaintiff stated in her responses to
interrogatories that she had not engaged in any conduct in violation of Policy 2.1, but at her
deposition she testified that it was possible that she violated Policy 2.1.  (Def.'s Statement of
Facts, D.E. # 16-2, at 6.)  However, the Court cannot weigh the evidence at summary judgment;
at best, the Court must take this different testimony in the light most favorable to Plaintiff.

Plaintiff received her February 8, 2008, written warning because her supervisor found her sending back-dated mail on February 6.  (Def.'s Statement of Facts, D.E. # 16-2, at 6.)  Plaintiff admits that she may not have timely processed the back-dated payments, and she could not state that she had received them on February 5.  (*Id.*)  Plaintiff's grievance email to Commissioner Farr contested this warning.  (*Id.* at 7.)  While Plaintiff conceded that it would have been important to tell Commissioner Farr that she had not received the payments until February 5, 2008, she did not mention when she received the payments in the email.  (*Id.*)  Plaintiff attempts to dispute these facts by citing to her Affidavit, which is not a part of the record and cannot support her assertions.  (Pl.'s Resp. to Def.'s Facts, D.E. # 25-2, at 7.)  Therefore, the facts in this paragraph are undisputed for purposes of this Motion.

Plaintiff received another oral warning on April 22, 2008 for her problems processing payments.  (Def.'s Statement of Facts, D.E. # 16-2, at 7.)  On July 8, 2008, she was notified that she would be suspended for three days.  (*Id.*)  Her supervisor also discovered that she had initially posted two collections on May 23, 2008, but Plaintiff subsequently added fourteen more which were date stamped June 3, 2008.  (*Id.*)  Plaintiff admits that she may have done these things, and if so, she would have violated Policy 2.1.  (*Id.*)

On January 13, 2009, Plaintiff received a letter informing her of Defendant's intent to terminate her.  (*Id.*)  The decision was based on her prior reprimands and because she had again failed to timely process money on December 10, 2008.  (*Id.*)  Plaintiff attempts to assert that "her termination was based upon a pre-orchestrated plan."  (Pl.'s Resp. to Def.'s Facts, D.E. # 25-2, at 8.)  However, she cites to her absent Affidavit; accordingly, Plaintiff fails to properly dispute this fact.

In her interrogatories, completed by her attorney on information provided by Plaintiff, Plaintiff was asked to include "every incident, act, occurrence, or other circumstance that forms the basis of your belief that you were discriminated against . . . by Defendant." (Def.'s Statement of Facts, D.E. # 16-2, at 7-8.) Plaintiff did not include her disciplinary actions or termination in that response. (*Id.* at 8.) While she tries to "clarify that the daily occurrences are far too many for her to remember each and every single one [because they] occurred on an almost daily basis," Plaintiff cites to her Affidavit, which is not part of the Court's record. (Pl.'s Resp. to Def.'s Facts, D.E. # 25-2, at 8.)

Defendant points out that Plaintiff stated that she did not know why Cobb was given preferential treatment. (Def.'s Statement of Facts, D.E. # 16-2, at 8.) To no avail, Plaintiff again cites to an absent page of her deposition and her Affidavit to support her assertion that Cobb received preferential treatment based on his gender and race. (*Id.*) It is undisputed that Defendant hired another African-American female to replace Plaintiff. (Def.'s Statement of Facts, D.E. # 16-2, at 8.)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] In reviewing a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party.[7] When the motion is supported by documentary proof such as depositions and affidavits, the

---

[6]      Fed. R. Civ. P. 56(a).

[7]      *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

nonmoving party may not rest on his pleadings but instead must present some "specific facts showing that there is a genuine issue for trial."[8]  It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts."[9]  These facts must be more than a scintilla of evidence and must meet the standard of whether a reasonable juror could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict.[10]  When determining if summary judgment is appropriate, the Court should ask "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-side that one party must prevail as a matter of law."[11]

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[12]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[13]

## ANALYSIS

### Statute of Limitations

---

[8]    *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9]    *Matsushita*, 475 U.S. at 586.

[10]    *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[11]    *Id*. at 251-52.

[12]    *Celotex*, 477 U.S. at 322.

[13]    *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

Failure to timely exhaust administrative remedies is an appropriate basis for dismissal of a Title VII action[14] because the exhaustion of administrative remedies is a condition precedent to a Title VII suit.[15]  To properly exhaust administrative remedies, "a plaintiff must file an EEOC charge within 180 days of the alleged unlawful employment practice or, if the plaintiff has instituted proceedings with a state or local agency, within 300 days."[16]  While discrete discriminatory acts are not actionable if they are time-barred, each discrete discriminatory act starts a new clock for filing charges alleging that act.[17]  "The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed.  Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim."[18]  Thus, only those discrete discriminatory acts filed within the 300 day period are actionable; the remaining acts are time-barred.

However, for hostile work environment claims, the rule is different.  Because Title VII requires claims to be filed within 300 days after the alleged unlawful employment practice, and because a hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice, "[t]he timely filing provision requires

---

[14]    *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).

[15]    *Zipes v. Trans World Airlines*, 455 U.S. 385, 392-98 (1982).

[16]    42 U.S.C. § 2000e-5(e); *Williams v. N.W. Airlines, Inc.*, 53 F. App'x 350, 352 (6th Cir. 2002).

[17]    *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

[18]    *Id.*

that a Title VII plaintiff file a charge within a certain number of days after the unlawful practice happened."[19]  Thus, "[i]n order for the charge to be timely, the employee need only file a charge within . . . 300 days of any act that is part of the hostile work environment."[20]

In its Motion, Defendant argues that Plaintiff's remaining claims are time-barred. Defendant points out that because Tennessee has the Tennessee Human Rights Commission ("THRC"), with the authority to grant or seek relief regarding unlawful employment practices, Plaintiff had to have filed her charge with the EEOC or the THRC within 300 days of being discriminated against or subjected to a hostile work environment claim.[21]  Defendant argues that Plaintiff provided a list of twenty-nine separate discriminatory or unlawful employment practices, the last of which was November 14, 2008.[22]  Thus, for her claims to be timely filed, she would have had to file them by September 10, 2009.  However, because Plaintiff filed her THRC claim on November 2, 2009, her claims are untimely.[23]  Defendant contends that because "the undisputed facts establish that Plaintiff identified no conduct in which a person outside her class was treated differently in the 300 days preceding her filing a charge of discrimination, . . . the Court should grant Defendant's Motion."[24]

---

[19]     *Id.* at 117.

[20]     *Id.* at 118.

[21]     (Def.'s Mot., D.E. # 16-1, at 5.)

[22]     (*Id.* at 6.)

[23]     (*Id.*)

[24]     (*Id.* at 7.)

In response, Plaintiff argues "Defendant was aware" that her July 2009[25] termination, as listed in her EEOC charge Complaint, was part of its discrimination.[26]  She states as follows: "Plaintiff also clarified this in her deposition.  (CITE)[.]"[27]  Additionally, Plaintiff relies on the continuing violation doctrine and appears to argue that her "claims are not time-barred as Defendant asserts and the incidents asserted should be included" under the doctrine.[28]  However, Plaintiff does not identify which incidents are within the 300-day time period.

Here, Plaintiff filed the earlier of her two charges of discrimination with the THRC on November 2, 2009.  Thus, for her race and gender discrimination claims to be timely, Plaintiff needed to allege a discrete discriminatory act occurring sometime on or after January 6, 2009, 300 days before November 2.  For her hostile work environment claim to be timely, at least one of the events forming part of the hostile work environment would have to have occurred on or after January 6, 2009.  However, Plaintiff is bound to the evidence she put forth at summary judgment and during discovery.  She did not list her termination as a discriminatory event, and the last individual event forming the "basis for [her] belief that [she was] discriminated against and/or subjected to a hostile work environment by . . . Defendant" is November 14, 2008.[29]  But Plaintiff was terminated for allegedly failing to comply with Policy 2.1's requirements for the

---

[25]     Neither party has presented the concrete date of Plaintiff's actual termination. The Complaint indicates that she was fired on January 30, 2009.  (Compl. ¶ 9.) In contrast, Plaintiff's EEOC charge appears to state February 9, 2009, as her termination date.  The Court will evaluate this Motion by using the date most favorable to Plaintiff: January 30, 2009.

[26]     (Pl.'s Resp., D.E. # 25-1, at 6.)

[27]     (*Id.*)

[28]     (*Id.*)

[29]     (Pl. Resp. to Def.'s Interrogs., D.E. # 16-7, at 3-10.)

timely processing of payments, and some of the events Plaintiff lists include how the alleged discrimination interfered with her ability to timely process payments. Accordingly, the Court finds that Plaintiff's termination would be a natural consequence of the discrimination.

Thus, even if Plaintiff was terminated on January 30, 2009, her claims would be timely filed, as her termination occurred in the 300 days between January 6, 2009, and Plaintiff's filing of her THRC notice on November 2, 2009. However, the scope of Plaintiff's gender and race discrimination claims is limited by the filing of her THRC notice: only those events occurring within the 300 day period between January 6 and November 2, 2009 are actionable. Plaintiff's hostile work environment claim is actionable because at least one event of the hostile work environment—her termination—occurred during the 300 day period. Accordingly, this portion of Defendant's Motion for Summary Judgment is **DENIED**, and the Court will proceed to the merits of Plaintiff's claims.

## Gender and Race Discrimination

Title VII prohibits discrimination in employment on the basis of "race, color, religion, sex, or national origin."[30] Plaintiffs may establish discrimination in one of two ways: through the use of direct evidence or through circumstantial evidence using the burden-shifting framework articulated in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973).[31] Any evidence which requires an inference to be drawn to determine the motivation behind it is not direct evidence of discriminatory animus.[32] Here, Plaintiff has not submitted direct evidence of race or gender

---

[30]     42 U.S.C. § 2000e-2(a)(1).

[31]     *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 835 (6th Cir. 2012).

[32]     *See id.* at 836.

discrimination; accordingly, the Court will apply the *McDonnell Douglas* framework.  Under *McDonnell Douglas*, a prima facie case consists of four elements: (1) membership in a protected class; (2) that the plaintiff was qualified for the job; (3) that he or she suffered an adverse employment action; and (4) that he or she was treated differently than similarly situated employees of a different protected class.[33]  To be considered similarly situated, the comparator's employment situation must be similar to that of the plaintiff in all relevant aspects.[34]

If a plaintiff can establish these four elements of the prima facie case of discrimination, "the burden of production shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for the adverse action."[35]  If the defendant meets that burden of production, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was merely a pretext for discrimination.[36]  There are three bases for a defendant's reason to be pretextual: (1) it has "no basis in fact," (2) it "did not actually motivate the adverse action," or (3) it "was insufficient to motivate the adverse action."[37]   If the plaintiff can show that the defendant's "proffered, nondiscriminatory reason was pretextual, unlawful retaliation may be inferred and

---

[33]     *Arendale v. City of Memphis*, 519 F.3d 587, 603 (6th Cir. 2008).

[34]     *Highfill v. City of Memphis*, 425 F. App'x 470, 474 (6th Cir. 2011).

[35]     *Kinamore v. EPB Elec. Util.*, 92 F. App'x 197, 202 (6th Cir. 2004).

[36]     *Id.* (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000)).

[37]     *Denhof v. City of Grand Rapids*, 494 F.3d 534, 542 (6th Cir. 2007).

she would be entitled to take her claim to a jury."[38]  Throughout this entire *McDonnell Douglas*

framework, the plaintiff bears the burden of persuasion.[39]

In its Motion, Defendant argues that Plaintiff has failed to make out the fourth element of

her prima facie case: she has not shown that any individuals of another race or gender were

treated differently.[40]  Defendant points out that Plaintiff identified only Cobb in her

interrogatories, and their treatment differed because she was given some of his work to do.

Defendant argues that Plaintiff "has no proof whatsoever that [Cobb] ever failed to comply with

[P]olicy 2.1 once, much less four times like she did."[41]  Alternatively, Defendant submits that it

articulated legitimate, non-discriminatory reasons for each of its employment decisions: Plaintiff

failed to comply with the requirements of Policy 2.1.[42]  Defendant relies on Plaintiff's

documented disciplinary record to argue that Plaintiff cannot demonstrate an issue of fact as to

pretext and argues that Plaintiff's own testimony indicates that her harassment arose because her

supervisors were disciplined for improperly handling Plaintiff's assault by a coworker.[43]

In response, Plaintiff only addresses Defendant's argument regarding her prima facie

case.  She argues that Cobb had a higher amount of old cases than she did and that he was not

---

[38]     *Id.*  (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 344 (6th Cir. 1997)).

[39]     *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).

[40]     (Def.'s Mot., D.E. # 16-1, at 9.)

[41]     (*Id.*)

[42]     (*Id.* at 9-10.)

[43]     (*Id.* at 10.)  It is undisputed that Plaintiff was not replaced by someone outside either of her protected classes: Defendant hired an African-American female as her replacement.

reprimanded for having a higher number.[44]  But she then points out that she was assigned to an area with a low rate of rollovers, "causing her number to also be has high as . . . Cobb's."[45]  She also argues generally, without citation to the record, that she "made any and every effort she could to ascertain funds from these territories and to establish some type of assistance from her superiors, yet to no avail."[46]

Plaintiff's claims of race and gender discrimination fail.  Even if Plaintiff could successfully make out a prima facie case, the Court finds that Defendant has presented a legitimate, non-discriminatory reason for her termination: she failed to comply with the requirements of Policy 2.1, which Plaintiff herself recognized as important.  Furthermore, Plaintiff has not submitted evidence sufficient to create a question of fact as to pretext.  She has not contested that she did not properly process payments; in fact, she said that it was possible or even probable that she had not done so.  Thus, she cannot argue that Defendant's non-discriminatory reason has no basis in fact.  Nor has Plaintiff presented evidence indicating that the non-discriminatory reason did not actually motivate the adverse action or that it was insufficient to motivate her termination.  Accordingly, the Court finds that Plaintiff cannot make out a claim of race or gender discrimination, and Defendant's Motion for Summary Judgment is **GRANTED** in this regard.

### Hostile Work Environment

---

[44]     (Pl.'s Resp., D.E. # 25-1, at 7.)

[45]     (*Id.*)

[46]     (*Id.*)

19

Title VII also protects employees from workplaces "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[47]  To prevail on a hostile work environment claim, a plaintiff must show that his or her work environment was both objectively and subjectively hostile.[48]  Thus, a prima facie case of a hostile work environment based on race consists of five elements: (1) membership in a protected class; (2) subjection to unwelcome harassment; (3) harassment based on membership in a protected class; (4) unreasonable interference with work performance by creating an intimidating, hostile, or offensive work environment, and (5) employer liability.[49]  The same *McDonnell Douglas* burden shifting analysis for disparate treatment claims based on circumstantial evidence applies to hostile work environment claims under Title VII.[50]

An alleged hostile work environment is evaluated by examining the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[51]  Notably, single episodes of derogatory language are insufficient to establish that the comments are severe or pervasive.[52]  And a hostile

---

[47]     *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

[48]     *Ejikeme v. Violet*, 307 F. App'x 944, 948 (6th Cir. 2009).

[49]     *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999).

[50]     *See Auston v. City of Clarksville*, 244 F. App'x 639, 651-52 (6th Cir. 2007).

[51]     *Harris*, 510 U.S. at 23.

[52]     *Cooper v. Jackson-Madison Cnty. Gen. Hosp. Dist.*, 742 F. Supp. 2d 941, 956 (W.D. Tenn. 2010).

work environment plaintiff needs to allege sufficient specificity as to the time, place, and context of alleged discriminatory statements to create a genuine issue of material fact.[53]

In its Motion, Defendant presents two reasons why Plaintiff's hostile work environment claim fails.  First, it argues that Plaintiff admitted that she possibly engaged in the conduct underlying her reprimands.[54]  Second, it avers that her documentation and deposition testimony indicate that she believed that the harassment and hostile work environment arose from her supervisors' discipline.[55]  Thus, Defendant argues that Plaintiff has not submitted any evidence indicating that she suffered any harassment or discrimination because of her race or gender, thereby failing to satisfy the third element of her prima facie case.[56]  In response, Plaintiff argues that the terms and conditions of her employment changed after her supervisors were reprimanded.[57]  She lists several ways in which she was treated differently than her peers, all without citation to record evidence.[58]  However, Plaintiff tempers her allegations by noting that "upon the discipline [of her] superiors," she suffered an overload of job duties designed to

---

[53]    *Id.* (citing *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 501 (6th Cir. 2009); *Fuelling v. New Vision Med. Labs. LLC*, 284 F. App'x 247, 259-60 (6th Cir. 2008); *Fasone v. Clinton Twp.*, No. 97-3267, 1998 WL 165147, at *1 (6th Cir. Apr. 3, 1998); *Crawford v. Medina Gen. Hosp.*, 96 F.3d 830, 836 (6th Cir. 1996)).

[54]    (Def.'s Mot., D.E. # 16-1, at 11.)

[55]    (*Id.*)

[56]    (*Id.*)

[57]    (Pl.'s Resp., D.E. # 25-1, at 8.)

[58]    (*Id.*)

21

"strategically discharge her from employment."[59]  Thus, Plaintiff argues that she was subjected to a hostile work environment.

Such arguments are ineffective and wholly fail to satisfy the requirements of Plaintiff's prima facie case.  Plaintiff has not put forth evidence that she was harassed based on her gender or her race; rather, her deposition testimony focused on the fact that her supervisors only began harassing her after they were reprimanded for failing to address her assault.  Despite Plaintiff's utter failure to properly support her allegations with citations to the record, the Court has identified a passage in which Plaintiff began to believe that the discrimination was based on her race and gender.[60]  But without more, this mere evolving belief is insufficient to support Plaintiff's prima facie case.  Thus, the Court finds that Plaintiff has failed to make out a prima facie case of a hostile work environment claim under Title VII.  Moreover, even if she could make out a prima facie case, as discussed above, Defendant has put forth a legitimate, non-discriminatory reason for her termination, and Plaintiff cannot present evidence sufficient to create a question of fact as to pretext.  Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's hostile work environment claim is **GRANTED**.

<u>**CONCLUSION**</u>

For the foregoing reasons, Defendant's Motion is **GRANTED**.

**IT IS SO ORDERED.**

---

[59]     (*Id.*)

[60]     (Dep. of Pl., D.E. # 16-4, at 28.)

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: May 24, 2012.